UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George N. S. Jones, Sr., *also known as* George S. Jones, Sr., <br><br>  Plaintiff, <br><br> v. <br><br> Warden Busch, Warden Reynolds, Asso. Warden Davis, Asso. Warden Sharp, Capt. Thomas, Asso. Warden Nolan, Nurse Anderson, Nurse Bass, Nurse Jones, Nurse Hubbard, Nurse Noray, <br><br>  Defendants. | C/A No. 9:15-722-MGL-BM <br><br><br><br> **REPORT AND RECOMMENDATION** |

The Plaintiff, George N.S. Jones, Sr., also known as George S. Jones, Sr., proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. At the time of the alleged incidents he was an inmate at the McCormick Correctional Institution or the Lee Correctional Institution, both part of the South Carolina Department of Corrections (SCDC). He is currently housed at the Broad River Correctional Institution of SCDC.

Plaintiff alleges that he was given incorrect medications, the wrong dosage of his medication, missed a dosage of medication, or received his medication late on a few occasions; his prison job as a tutor or teacher was improperly taken from him; some of his grievances were not processed; after he saw another inmate do an improper act, the whole dorm and supervisors of the dorm "wanted to turn on him"; and he was placed in the special management unit (SMU) even though he has sleep apnea and takes at least ten pill packages a day for his various medical conditions.



Complaint, ECF No. 1 at 3-6.  Amended Complaint at 1-2.[1]  He requests $250,000 in damages.  Id. at 4.

**Discussion**

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915 and § 1915A, the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents:  Denton v. Hernandez, 504 U.S. 25 (1992), Neitzke v. Williams, 490 U.S. 319 (1989), Haines v. Kerner, 404 U.S. 519 (1972), Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir. 1995), and Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).  Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a pro se complaint to allow the development of a potentially meritorious case.  Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972); Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

However, even when considered pursuant to this liberal standard, for the reasons set forth herein below this case is subject to summary dismissal.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) [outlining pleading requirements under the Federal Rules of Civil Procedure].

---

[1]Plaintiff's Amended Complaint (ECF No. 11) appears to incorporate his original Complaint (ECF No. 1).

2



**I.**

**(Exhaustion of Administrative Remedies)**

First, a plain reading of the Complaint shows that Plaintiff did not properly exhaust his available administrative remedies as to any of his alleged claims, other than possibly as to his claim that he was given the wrong medications on April 12, 2014.[2]  Before a prisoner can proceed with a lawsuit in federal court concerning prison conditions, he must first exhaust his administrative remedies as required by the Prison Litigation Reform Act, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740–41 (2001).

To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "'using all steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

---

[2] Plaintiff's claim concerning the administration of his medications on April 12, 2014 is subject to summary dismissal for the reasons discussed herein, infra.

3



Further, while a plaintiff's failure to exhaust administrative remedies is considered an affirmative defense, and not a jurisdictional infirmity; id. at 216; if the lack of exhaustion is apparent on the face of the prisoner's complaint, sua sponte dismissal prior to service of the complaint is appropriate. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006). Here, Plaintiff wrote that he filed his grievance on April 12, 2014, and checked a box on the Complaint form indicating he received a final determination regarding the matters alleged. However, although Plaintiff's allegation involving having been given the wrong medications occurred on April 12, 2014, the other alleged incidents all occurred after this date (with the exception of an incident concerning his prison job, which occurred in 2008).[3] Therefore, Plaintiff's claims concerning incidents other than that which allegedly occurred on April 12, 2014 are subject to summary dismissal for Plaintiff's failure to exhaust his available administrative remedies. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (S.C. 1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking

---

[3]Although it is unlikely that a grievance filed in April 2014 would have been timely as to Plaintiff's 2008 job claim, even if Plaintiff's allegations concerning his prison job have been properly exhausted, they are subject to summary dismissal for the reasons discussed herein, infra.



relief in the courts"]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)); Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies]; Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012) ["A court may not consider, and must dismiss, unexhausted claims"].

## II.

### (Medical Claims)

Even if Plaintiff could show that he exhausted his available administrative remedies as to the incidents that allegedly occurred after April 12, 2014 (the only date on which Plaintiff alleges he filed a grievance), those claims (as well as his possibly exhausted claim from April 12, 2014) would still be subject to dismissal for the reasons discussed below.

Plaintiff alleges that on a few occasions he was given the wrong medications, the wrong dosage of medication, or that his receipt of his prescribed medication was delayed. Specifically, he claims that on the mornings of April 12 and 13, 2014, he was given the wrong medicine (Dilantin to which he was allergic); on an unspecified day (which might have been April 12 or 13, 2014) Benadryl "spilled all over" his 8:00 p.m. medications; on May 21, 2014, Neurontin (which he was not prescribed) was given to him and that he had to wait on Nurse Jones and Nurse Hubbard in order to return the medication and obtain his correct medications; on the mornings of April 30 and May 1, 2014, Nurses Andersen and Nohay did not bring him the correct or full amount of his medications; on April 30, 2014, he had to wait until 4:00 to get his Phenobarbitol (usually



brought to him in the morning); on May 1, 2014, Ms. Nohay did not bring his Tegretol 4:00 p.m.; on June 11, 2014, Nurse Hubbard gave Plaintiff too many Phenobarbitol and Tegretol tablets (Plaintiff had to call the error to the attention of Captain Graham and the excess medication was returned); and on July 26, 2014, Nurse Bass did not bring Plaintiff any Phenobarbitol. ECF No. 1 at 3-4, ECF No. 11.

A prisoner in a § 1983 case "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs to proceed with a claim under this statute." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Errors in judgment or mistakes do not state a constitutional claim for deliberate indifference. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]. Here, Plaintiff alleges that, on a few occasions, his medications were distributed at the wrong time of day, he was provided the wrong medication and/or had to wait to obtain the correct medication; he was given the wrong dosage of medication, or he missed a dose of his medication. He has not asserted that he suffered any harm or negative effects from these alleged actions. It is well settled that negligent or incorrect medical treatment (medical malpractice) is not actionable under 42 U.S.C. § 1983, as deliberate indifference to a prisoner's serious medical needs is actionable under § 1983 only if Plaintiff can prove that his inadequate medical care was more than merely negligent. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328-36 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) [applying Daniels and Ruefly: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct[.]"]. A medical malpractice claim "does not



become a constitutional violation merely because the victim is a prisoner." Estelle, at 106; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care].

Plaintiff also alleges that the Defendants' conduct was due to "retaliation" and "discrimination", but provides no supporting facts to support this claim. Such bare, conclusory assertions of retaliation or discrimination do not establish a claim of constitutional dimensions. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974)["[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated."]; see generally, Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

Plaintiff claims that Defendant Nohay was unprofessional and had a mean disposition. ECF No. 1 at 3-4, ECF No. 11 at 1-2. After complaining that Nohay was late in giving him Tegretol tablets on May 1, 2014, Nohay allegedly stated "[t]he only thing about [Plaintiff's] opinion is that [Plaintiff does] not sign her paycheck," laughed, and walked away. ECF No. 1 at 4. However, these allegations also fail to state a constitutional claim. See, e.g., Sires v. Berman, 834 F.2d 9, 13 (1st

7



9:15-cv-00722-MGL     Date Filed 09/22/15    Entry Number 17     Page 8 of 17

Cir.1987)[Petty squabble with a rude nurse is not deliberate indifference to a serious medical need]; Badu v. Broadwell, No. 5:11–CT–3192–F, 2013 WL 286262 (E.D.N.C. Jan. 24, 2013)["However objectionable one might find the nurse defendants' perceived lack of sympathy or unprofessional attitude, those allegations alone, even if construed as true, do not suffice to allege actionable deliberate indifference on their part.]; White v. Francis, No. 2:07cv15, 2009 WL 302310, at * 6 (N.D.W.Va. Feb. 5, 2009)[Medical care provider's unprofessional attitude when the plaintiff complained of side effect of provided medication failed to state a constitutional claim]; Riviera v. Alvarado, 240 F. Supp. 2d 136, 143 (D.P.R. 2003)["A bad attitude by a medical provider or a doctor's negligence in his choice of medications or treatment is not actionable under the Eighth amendment."]

Plaintiff's complaint that on a couple of occasions there may have been delays in receiving his medications also fails to state a claim, as he has not alleged any substantial harm resulting from any such delay. See Graham v. Stansberry, No. 5:07-CT-3015-FL, 2008 WL 3910689, at *8 n. 6 (E.D.N.C. Aug. 20, 2008)[Finding that "[e]ven if plaintiff had alleged a claim based upon the alleged delay in receiving heart medication, his claim would be without merit because delay in medical care, with no resulting injury, does not violate the Eighth Amendment."](citing Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir.1993); Mendoza v. Lynaugh, 989 F.2d at 195). An inmate may show deliberate indifference based on a delay of treatment only if the delay resulted in some substantial harm or created a substantial risk of serious harm of which the Defendants were aware. See, e.g., Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008)[Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient]; Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ["Delay in medical care only constitutes an Eighth Amendment violation

8



where the plaintiff can show that the delay resulted in substantial harm."]; Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993)[same]; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990)[same]. But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004)["This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware]."].

Plaintiff's medical claims therefore fail to state a claim sufficient to survive summary dismissal. Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]

### III.

### (Job Claims)

Plaintiff alleges that a Lieutenant Stewart "lied on [him] and cancelled [his] career as a School Teacher and Tutor." ECF No. 1 at 4. However, Plaintiff has not named Stewart as a Defendant in this action, and in any event a prisoner has no constitutional right to participate in prison programs, so his ineligibility or the failure to hire him for a prison work job is not a deprivation of constitutional magnitude. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)[custody classifications and work assignments are generally within the discretion of the prison administrator]; Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)["An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause."]; Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)[prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates].



Additionally, since Plaintiff states this happened on February 6, 2008, this claim is also barred by the applicable statute of limitations. State law concerning limitation of actions applies in claims brought under § 1983; See Wilson v. Garcia, 471 U.S. 261, 266 (1985), partially superseded by statute as stated in Jones v. R .R. Donnelly & Sons, Co., 541 U.S. 369, 377-380 (2004); and in South Carolina, the applicable statute of limitations is generally three years. See S.C. Code Ann. § 15-3-530. Here, Plaintiff filed this action more than three years after the alleged incident concerning his prison job.

## IV.

### (Grievance Process)

Plaintiff also complains in his Complaint that he filed several grievances that have not been answered or which were returned to him with a notation that they were being returned "unprocessed." ECF No. 1-1 at 1. However, to the extent Plaintiff has intended his complaints relating to how his grievances were handled to be a separate claim in this lawsuit, Plaintiff fails to state a claim, as it is well-settled that prison inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated. See Adams v. Rice, 40 F.3d at 75; see also Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) ("[A]ccess to the grievance procedure is not a constitutionally protected right[.]"); Oliver v. Myers, No. 7:08–CV–558, 2008 WL 5212409, at *4 (W.D.Va. Dec. 12, 2008) [stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts"], appeal dismissed, 335 F. App'x 317 (4th Cir. 2009).



Simply because any state or local authority chooses to establish an inmate grievance system, that choice does not confer a substantive constitutional right on prison inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Hence, even if corrections officials failed to properly handle Plaintiff's inmate grievances,[4] such failure is not actionable under § 1983. See Spencer v. Moore, 638 F. Supp. 315, 316 (E.D.Mo. 1986).

V.

**(Potential Additional Claims)**

Plaintiff also complains that he witnessed certain actions by another inmate, after which "the whole dorm wanted to turn on him," including dorm supervisors. He also claims he was put in the special management unit (SMU) even though he had medical problems. Complaint, ECF No. 1 at 5. It is unclear what is to be made of these allegations, as they are generally incomprehensible and filled with what could only be considered by a reasonable person as unconnected, conclusory, and unsupported comments or "gibberish". See Hagans v. Lavine, 415 U.S. 528, 536-537 (1974) [Noting that federal courts lack power to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit"]; see also Livingston v. Adirondack Beverage Co., 141 F.3d 434 (2nd Cir.

---

[4]The undersigned would note, however, that there is nothing overtly improper about prison officials returning a grievance as "unprocessed" if they conclude proper process has not been followed. Further, even where a grievance is returned unprocessed, the prisoner is still required to complete the grievance process before filing a federal lawsuit. Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) ["Nevertheless, even if Plaintiff did file a Step 1 grievance that was returned unprocessed, there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."]; cf. Nally v. King, No. 12-128, 2013 WL 594709, at * 3 (N.D.W.Va. Jan. 3, 2013) ["Failure to receive a response is not an excuse for not moving to the next level of the grievance procedure"]; adopted by 2013 WL 593448 (N.D.W.Va. Feb. 15, 2013); Jordan, 439 F.Supp.2d at 1241-1242 [Remedies not exhausted where inmate did not appeal denial]; Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility].

11



1998); Adams v. Rice, 40 F.3d at 74-75 [Affirming dismissal of plaintiff's suit as frivolous where allegations were conclusory and nonsensical on their face]. Further, Plaintiff fails to allege that any of the named Defendants were involved in these alleged actions.

Hence, any claims Plaintiff may be asserting connected to these allegations are subject to dismissal. Leeds, 85 F.3d at 53 ["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

## VI.

### Eleventh Amendment Immunity

Additionally, to the extent Plaintiff is seeking damages against the Defendants as employees of the State of South Carolina, they are entitled to Eleventh Amendment immunity in their official capacities with respect to any claims against them for monetary damages. The Eleventh Amendment to the United States Constitution divests this Court of jurisdiction to entertain a suit for damages brought against the State of South Carolina, its integral parts, or its officials in their official capacities, by a citizen of South Carolina or a citizen of another state. See Alden v. Maine, 527 U.S. 706 (1999); College Savs. Bank v. Florida Prepaid Educ. Expense Bd., 527 U.S. 666 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)(reaffirming Hans v. Louisiana, 134 U.S. 1, 10 (1890) [holding that a citizen could not sue a state in federal court without the state's consent]; Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984)[although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens]; Alabama v. Pugh, 438 U.S. 781, 782 (1978); Will v. Michigan Dep't of State Police, 491 U.S. 58, 61-71 (1989); Edelman v. Jordan, 415



U.S. 651, 663 (1974)[stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants"](quoting Ford Motor Co. v. Dep't. of Treasury, 323 U.S. 459, 464 (1945)); see also Harter v. Vernon, 101 F.3d 334, 338-39 (4th Cir. 1996); Bellamy v. Borders, 727 F. Supp. 247, 248-50 (D.S.C. 1989); Coffin v. South Carolina Dep't of Social Servs., 562 F. Supp. 579, 583-85 (D.S.C. 1983); Belcher v. South Carolina Bd. of Corrs., 460 F. Supp. 805, 808-09 (D.S.C. 1978).

While the United States Congress can override Eleventh Amendment immunity through legislation, Congress has not overridden the States' Eleventh Amendment immunity in § 1983 cases. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Further, although a State may consent to a suit in a federal district court, Pennhurst, 465 U.S. at 99 & n.9, the State of South Carolina has not consented to such actions. Rather, the South Carolina Tort Claims Act expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state. S.C. Code Ann. § 15-78-20(e). Therefore, these Defendants are entitled to dismissal of Plaintiff's claims for damages against them in their official capacities.

## VII.

### (Supervisory Liability)

The undersigned is also constrained to note that Plaintiff has made no allegations against Defendants Associate Warden Davis, Associate Warden Sharp, Captain Thomas, and Associate Warden Nolan. In order to proceed under § 1983, a plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights; Vinnedge v. Gibbs, 550



F.2d 926, 928 (4th Cir. 1977); and when a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. See Karafiat v. O'Mally, 54 F. App'x 192, 195 (6th Cir. 2002); Curtis v. Ozmint, C/A No. 3:10–3053–CMC–JRM, 2011 WL 635302 at *4 n. 5 (D.S.C. Jan. 5, 2011), adopted by, 2011 WL 601259 (D.S.C. Feb. 11, 2011); Whaley v. Hatcher, No. 1:08CV 125–01–MU, 2008 WL 1806124, at *1 (W.D.N.C. Apr.18, 2008). Additionally, a § 1983 claim for supervisory liability cannot rest on the doctrine of respondeat superior. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999).

Although there is a limited exception to the prohibition against imposing liability on supervisory personnel in § 1983 cases under the doctrines of respondeat superior or vicarious liability, see Slakan v. Porter, 737 F.2d 368, 370–75 (4th Cir. 1984), that exception does not operate to save Plaintiff's Complaint from dismissal for failure to state a claim against Defendants Davis, Sharp, Thomas, and Nolan, as the Slakan exception requires factual allegations showing a "pervasive and unreasonable risk of harm from some specified source ..." coupled with allegations showing that the supervisor's "corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan, 737 F.2d at 373; see Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). While Plaintiff alleges that he talked to Warden Busch and Warden Reynolds about his complaints and they stated they "would talk to medical about it, but nothing was done about it"; ECF No. 1 at 2; even assuming this general and conclusory allegation would be sufficient to state a claim for violation of a constitution right against either of these two Defendants, Plaintiff has made no allegations against Davis, Sharp, Thomas and Nolan.

Hence, even if this Court were to find that Plaintiff's case could otherwise proceed at this time, these four (4) Defendants are entitled to dismissal as party Defendants.



**VIII.**

**(State Law Claims)**

It is unclear whether Plaintiff is attempting to assert any state law claims in this case. However, to the extent Plaintiff has alleged claims under state law, federal courts are allowed to hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction." See 28 U.S.C. §1367; Wisconsin Dep't of Corrs. v. Schacht, 524 U.S. 381, 387 (1998). Since, for the reasons already set forth, supra, Plaintiff has asserted no valid federal claims, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state law claims, if any. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].

Finally, while a civil action for a state law claim would be cognizable in this Court on its own under the federal diversity statute, that statute requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). See 28 U.S.C. § 1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372-374 (1978). Here, all parties to this action appear to be residents of South Carolina, so diversity of citizenship does not exist. See ECF No. 1 at 2. Accordingly, this Court has no diversity jurisdiction over any state law claims being asserted.

In sum, to the extent Plaintiff has asserted any state law claim, they are subject to dismissal.



**Recommendation**

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process.

Plaintiff's attention is directed to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

September 22, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

